WATSON, Judge.
Plaintiff, Charles E. Walker, filed this suit seeking to collect commissions allegedly due from the defendant, Earl Mayeaux, d/b/a Continental Fidelity Agency, as the result of sales of health insurance policies by plaintiff. Mayeaux reconvened for office rent allegedly owed by plaintiff. The trial court gave plaintiff a judgment for $526.10 and dismissed the reconventional demand.
Defendant Mayeaux has appealed sus-pensively, contending: (1) that the trial court erred in its interpretation of the written contract between the parties in awarding plaintiff a money judgment; and (2) that the trial court erred in not giving defendant a judgment on his reconventional demand for office rent of $500.
It was stipulated between the parties that plaintiff Walker entered into a written contract with defendant Mayeaux relative to the selling of health insurance policies. The contract in question was introduced into evidence as P-1 and consists of a standard form entitled “Agent’s Contract.” Only certain portions of the contract are pertinent to the litigation. Paragraph 13 reads as follows:
13. In order to continue this contract in force and to be entitled to receive renewal commissions provided herein, Agent agrees and obligates himself to produce in acceptable new business the following:
At least eight (8) acceptable health applications per month. The above mentioned applications apply to all hospitalization, health and disability income' policies and plans.
It is understood that “renewal commission” as set forth in this Contract shall refer to commissions received on premium payments paid into the Agency after the first or initial payment has been received. (TR. 8).
The printed portion of the contract was signed by both parties. Added to the form contract under “Schedule of Commissions” was the following:
‡ ‡ * * * *
“Effective immediately, you shall receive 50% of the initial and first year premiums paid with applications for Health Insurance Policies issued by the underwriting Company and which were solicited by you and/or your sub-agents. You shall remit as nets due the Agency, with your Health Plan Applications, 50% of the initial premium collected with these applications, plus $2.00 per application.”
* ‡ * * * *
“Your Commission Schedule is further amended to the extent that you shall receive renewals of 10% after the first year, provided you are an active agent *871 for the Agency and qualify in accordance with other terms of this agreement stated hereinafter. Renewals of 40% shall he paid to you during the balance of the first policy year.”
* * * * * *
(TR. 8).
The parties signed this page of the contract as well as the printed portion of the contract.
The trial court in its written reasons for judgment found as follows:
“The evidence reflects that Walker did not sell eight acceptable Health applications in any one month, therefore, he would not be entitled to any renewal commissions under the paragraph thirteen quoted above. He would, however, be entitled to fifty per cent of the first year premiums paid on applications for Health insurance that he or his agents sold during the effective dates of the contract. Walker testified that he or his agents sold several policies and retained a total of $162.-81. Evidently all of these policy holders failed to keep their insurance in force during the first year, and at the close of the proceedings the attorneys for the plaintiff and defendant stipulated that Larry Vi-drine, Ed Lejeune, Wilson Lewis, Leslie George, Jr., paid their premiums for eleven months, for a total of $1,319.92 Walker had previously collected a total of $133.86 on these four accounts, therefore, Mayeaux owes a balance of first year premiums in the amount of $526.10.” (TR. 22).
The contract in question was executed on October 15, 1971. On February 11, 1972, defendant Mayeaux wrote plaintiff Walker a letter canceling his appointment as an agent of Continental Fidelity Life Insurance Company. During the interim period of employment, plaintiff Walker submitted applications for health insurance policies from customers to the Company. On the applications that he submitted which were accepted Walker received 50 per cent of the first month’s premium. He contends that he should have received 50 per cent of the amounts paid by those insureds during the first year of their policies as set forth in the “Schedule of Commissions” hereinabove. Mayeaux contends that Walker is only entitled to 50 per cent of the first month’s premium payment on those policies. We believe that the trial court was correct in finding that Walker was in fact entitled to 50 per cent of the first year’s premiums on policies which he sold for the company. Defendant Mayeaux contends that these first year payments were renewal commissions as covered in paragraph 13 of the contract and dependent on maintaining a certain volume of sales, but we do not believe that this is a reasonable interpretation of the agreement. Renewal commissions would be those collected if and when the policies were renewed for an additional year or years. As Walker testified: “I am not after renewable commissions. I am after first year commissions,” (TR. 57-58). Moreover, as the trial court pointed out in denying defendant’s motion for a new trial, in the event of a conflict between the printed portion of the contract in paragraph 13 and the typed in portion of the contract under the “Schedule of Commissions,” the latter should prevail having been separately typed and executed by the parties and constituting an addition or amendment to the contract.
As to the office rent claimed by Mayeaux as plaintiff-in-reconvention, we agree with the trial court that Mayeaux failed to prove that a rental agreement was in effect during the term of Walker’s employment. On this point, Walker testified as follows:
. “ . . . the verbal agreement was that when we got this agency going that I would begin paying rent to Mr. May-eaux, but that had never come to pass, simply because we had never gotten it off the ground,” (TR. 51).
Mr. Mayeaux also testified concerning the rental agreement:
“This was an oral agreement in the office that we decided that $100.00 would be a fair rental,” (TR. 75).
*872 These two statements can be reconciled simply by finding that the $100 was to be paid when the agency was on a profitable basis. If there is a conflict in their testimony on this point, it was within the discretion of the trial court to accept the testimony of one or the other.
For the foregoing reasons, the judgment of the trial court is affirmed.
All costs are assessed against defendant and plaintiff-in-reconvention, appellant, Earl Mayeaux, d/b/a Continental Fidelity Agency.
Affirmed.